IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MONROE GUARANTY  INSURANCE                 CASE NO.:
COMPANY, and NATIONAL   TRUST
INSURANCE COMPANY,

      Plaintiffs,

v.

GRANGE   INSURANCE   COMPANY
f/k/a GRANGE  MUTUAL  CASUALTY
COMPANY,

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

COMES   NOW   Plaintiffs,   MONROE   GUARANTY   INSURANCE
COMPANY  ("Monroe"),  and  NATIONAL  TRUST  INSURANCE  COMPANY
("NTIC"), by and through undersigned counsel, files this Complaint for Declaratory
Relief and Damages against Defendant, GRANGE INSURANCE COMPANY, f/k/a
GRANGE  MUTUAL  CASUALTY  COMPANY  ("Grange"),  and  as  grounds
therefore states as follows:

## NATURE OF THE ACTION

1.    This action arises out of an underlying construction defect litigation
(the "Underlying Action") in which Monroe and NTIC (collectively, the "Plaintiff
Insurers") provided coverage and made payments on behalf of their mutual insured,

R&D Caulking, Inc. ("R&D"), who is also insured under primary and umbrella policies issued by Grange. The payments made by Plaintiff Insurers fully and completely settled all claims asserted against R&D in the Underlying Action. These payments, however, exceeded Plaintiff Insurers' proportionate share under the terms of their respective insurance policies and applicable law, while Grange paid less than its required share under the terms of the Grange policies and applicable law.

2.    Plaintiff Insurers bring this action against Grange to seek declaratory relief regarding the Parties' respective coverage obligations, as well as claims for contribution, equitable subrogation, and unjust enrichment.

3.    Specifically, Plaintiff Insurers seek a determination that Grange is responsible for its fair share of the amounts paid in the Underlying Action on behalf of the mutual insured, R&D. Additionally, a portion of the payments made by Plaintiff Insurers for the benefit of R&D, unjustly enriched Grange, as those payments were applied to settle separate claims concerning Grange's additional insured obligations that were wholly distinct from the claims against R&D.[1] Grange has received the benefits of such payments without contributing its appropriate share, thereby creating a legal and equitable entitlement to reimbursement and contribution under principles of equity.

---

[1] The separate claims relating to Grange's additional insured obligations are asserted in the matter styled, *The Pointe Condominium Owners' Association, Inc., et al. v. Grange Mutual Casualty Company, et al.*, Case No. 3:26-cv-38, pending in the United States District Court for the Northern District of Florida, Pensacola Division.

4.     Accordingly, Plaintiff Insurers seek a judicial determination of Grange's obligations and an award of all amounts due to restore Plaintiff Insurers to the position they would have been in had Grange paid its proper share.

## PARTIES

5.     Monroe is an Indiana corporation with a statutory home office in Carmel, Indiana and an administrative office in Sarasota, Florida. Monroe is authorized to and conducts business in Florida.

6.     NTIC is an Indiana corporation with a statutory home office in Carmel, Indiana and an administrative office in Sarasota, Florida. NTIC is authorized to and conducts business in Florida.

7.     Grange is an Ohio corporation with a statutory home office and principal place of business located in Columbus, Ohio. On information and belief, Grange transacts and conducts substantial insurance business in the State of Florida, including issuing policies that insure risks and insureds with operations in Florida. Specifically, Grange insured the mutual insured, R&D, for risks arising out of operations in Florida and engaged in the handling, adjustment, administration, defense, and settlement of claims in the Underlying Action in Florida.

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.

9.     Plaintiffs Monroe and NTIC are citizens of Indiana and Florida, while Grange is a citizen of Ohio. Accordingly, there is complete diversity between the parties.

10.     Venue is proper in the Northern District of Florida pursuant to 28 U.S.C. § 1391 as the conduct which led to the Underlying Action, *infra*, occurred in Walton County, Florida, the Underlying Action, *infra*, is pending in the First Judicial Circuit in and for Walton County, and the settlement which resolved the claims against R&D occurred in relation to a mediation in Walton County, Florida.

## FACTUAL BACKGROUND

### A. The Policies

11.     Monroe issued insurance policies, bearing Nos. CPP0024354 1 and CPP100035733-01 to CPP100035733-04 to R&D (the "Monroe Policies"). The Monroe Policies were effective from June 15, 2017, to January 1, 2022, and included Commercial General Liability Coverage. The Monroe Policies are subject to a limit of $1 million each occurrence. *See* a true and correct copy of the Monroe Policies, attached as Composite Exhibit A.

12.     NTIC issued insurance policies, bearing Nos. UMB10014761-00 to UMB100014761-04 to R&D (the "NTIC Policies"). The NTIC Policies were effective from June 15, 2017, to January 1, 2021, and included Commercial Umbrella Liability Coverage. The NTIC Policies are subject to a limit of $4,000,000

each occurrence under policies Nos. UMB10014761-00 and UMB100014761-02, and a limit of $5,000,000 each occurrence under policies Nos. UMB100014761-03 and UMB100014761-04. *See* a true and correct copy of the NTIC Policies, attached as Composite Exhibit B.

13.    Grange issued insurance policies, bearing Nos. CPP 2316451-10 through 2316451-12 to R&D (the "Grange Policies"). Upon information and belief, the Grange Policies were effective from March 5, 2015, to June 15, 2017, and included Commercial General Liability Coverage. The Grange Policies are subject to a limit of $1,000,000 each occurrence. *See* Grange Policies, attached as Composite Exhibit C.

14.    Grange also issued insurance policies, bearing Nos. CUP 2326721-09 to CUP 2326721-11 (the "Grange Umbrella Policies"). Upon information and belief, the Grange Umbrella Policies were effective from March 5, 2015, to June 15, 2017, and included Commercial Liability Umbrella Coverage. The Grange Umbrella Policies are subject to a limit of $4,000,000 each occurrence. *See* Grange Umbrella Policies, attached as Composite Exhibit D.

**B. The Underlying Action**

15.    R&D, the mutual insured of Monroe, NTIC, and Grange, was hired to perform waterproofing work on a construction project in Walton County, Florida,

developing a condominium building for a condominium operated by The Pointe Condominium Owners' Association, Inc. ("The Pointe").

16.    At all times material hereto, the primary and umbrella policies issued by Grange were concurrently in effect, and thereafter the policies issued by Monroe and NTIC were successively in effect, with Monroe providing primary coverage and NTIC providing umbrella coverage, each insurer thereby being on the risk for a portion of the relevant period and providing coverage for the risks associated with the mutual insured's work on the construction project.

17.    The Pointe alleged construction defects, filing the Underlying Action in Walton County, Florida, bringing claims against Atticus Highway 98 Venture, LLC, Construction Two, LLC, and Humphries & Partners Architects, L.P., styled *The Pointe Condominium Owners' Association, Inc. v. Atticus Highway 98 Venture, LLC, et al,* Case. No: 2024-CA-000300 (Fla. 1st Cir. Ct.).

18.    The Pointe filed an Amended Complaint in the Underlying Action on December 30th, 2024, adding R&D and various other defendants to the Underlying Action. The Amended Complaint was amended by interlineation on January 15, 2025. *See* Amended Complaint in the Underlying Action, attached as Exhibit E.

19.    The Pointe alleged that latent defects in R&D's work caused property damage to the building over time.

20.    Monroe and Grange both agreed to defend R&D subject to Reservations of Rights, and further agreed to split all defense fees and costs on an equal 50/50 basis.

## C. __The Settlement of the Underlying Action__

21.    R&D reached a settlement with the Pointe on February 23, 2026, resolving all claims against R&D in the Underlying Action (the "Settlement Agreement"). The sum paid on behalf of R&D as part of the Settlement Agreement was in excess of $75,000.[2]

22.    Monroe and Grange, as co-primary insurers, had a common obligation to indemnify R&D under their respective policies.

23.    The Monroe Policies and Grange Policies provide primary coverage to the particular risk involved in the Underlying Action, while the NTIC Policies provide umbrella coverage above the Monroe primary policies.

24.    Grange refused to pay the full amount of its obligation based on an erroneous coverage position.

---

[2] The Pointe, R&D and its insurers reached a settlement in principle of the Underlying Action as of February 23, 2026. While the material terms of the Settlement Agreement have been agreed upon, the parties are in the process of finalizing a written settlement agreement memorializing those terms. Plaintiff Insurers believe that certain provisions of the forthcoming written Settlement Agreement, including but not limited to the specific monetary consideration to be paid, may be subject to confidentiality. Accordingly, out of an abundance of caution, Plaintiff Insurers have not alleged the specific settlement amounts herein. Plaintiff Insurers will amend this Complaint to allege such terms and amounts to the extent they are ultimately not subject to confidentiality, or otherwise make an appropriate supplemental filing or evidentiary showing to the Court concerning this information, as may be needed. Alternatively, upon request or instruction from the Court, Plaintiff Insurers can submit the finalized written Settlement Agreement for filing under seal or for *in camera* review.

25.    Each of Monroe's policies issued to the mutual insured, R&D, contains a "Two or More Coverage Forms or Policies Issued by Us" endorsement. *See* Ex. A, Pgs. 161, 342, 581, 852 and 1214 of 1659.

26.    The foregoing endorsement provides, in substance, that where multiple coverage forms or policies issued by Monroe or an affiliated company apply to the same "occurrence" or offense, the total limit of insurance available under all such policies shall not exceed the single highest applicable limit of insurance under any one policy.

27.    Pursuant to the plain language of those endorsements, regardless of the number of Monroe (or affiliates) policies potentially implicated by the same "occurrence" arising out of the Underlying Action, the maximum primary coverage available from Monroe for that occurrence was $1,000,000 – the highest single applicable limit under any one Monroe policy. Monroe paid that full $1,000,000 primary limit toward the Settlement Agreement on behalf of the mutual insured, R&D.

28.    Grange also issued primary policies to the mutual insured, R&D, that apply to the same occurrence and that contain no anti-stacking provisions or other restrictions limiting recovery to a single highest policy limit where multiple policies issued by the same insurer apply. Accordingly, once Monroe exhausted its single

highest primary limit, Grange was obligated to indemnify the mutual insured for the remaining primary amounts necessary to effectuate settlement.

29.    NTIC issued umbrella policies to the mutual insured, R&D, and had no obligation to fund or contribute toward the Settlement Agreement unless and until all applicable primary insurance for the occurrence, including the primary policies issued by Grange, was fully exhausted.

30.    Notwithstanding the foregoing, Grange refused to contribute its contractual and equitable share.

31.    Accordingly, in order to secure a full and final resolution of the claims asserted against R&D, in the Underlying Action, Monroe and NTIC agreed to fund and provide indemnity on behalf of R&D in amounts exceeding their respective contractual obligations under their policies and beyond what was required under applicable law. Monroe and NTIC did so for the benefit of their insured, R&D, and in its interest, with the purpose of fully extricating R&D from all claims asserted against it in the Underlying Action, notwithstanding that such payments exceeded their proportionate and legally required share of the loss.

32.    In connection with funding the Settlement Agreement on behalf of the mutual insured, R&D, Plaintiff Insurers and Defendant expressly agreed that all rights and defenses belonging to them were reserved solely as between the insurers. The settlement and related payments were not intended to waive or impair any of

R&D's insurers' rights amongst each other, to seek contribution, equitable subrogation, re-allocation, reimbursement, or other legal or equitable relief arising out of the amounts paid to resolve the claims against R&D in the Underlying Action.

33.    As a result of the Settlement Agreement resolving the Underlying Action for the benefit of R&D, Plaintiff Insurers seek a judicial declaration of the parties' respective rights, duties, and obligations under their policies. Plaintiff Insurers were compelled to fund settlement amounts on behalf of the mutual insured, R&D, in excess of their contractual and legally required share, thereby discharging obligations that properly belonged, in whole or in part, to Grange. Plaintiff Insurers therefore seek contribution and equitable subrogation to recover the sums Grange was obligated to pay but failed to fund. Plaintiff Insurers also seek recoupment for Grange's unjust enrichment, as portions of the settlement payments made by Plaintiff Insurers were applied to resolve separate and independent claims arising from Grange's additional insured obligations – obligations that were distinct from, and not part of, the claims asserted against the mutual insured, R&D, in the Underlying Action. Equity and applicable law require Grange to reimburse Plaintiff Insurers for these amounts.

## <u>COUNT I – DECLARATORY JUDGMENT</u>

34.    Plaintiffs Monroe and NTIC reallege Paragraphs 1 through 33 as fully set forth herein.

35.    This is a claim for a declaratory judgment pursuant to Fed. R. Civ. P. 57, for the purpose of resolving a present, real, and substantial controversy among the parties concerning the parties' legal rights, duties, and relationships with respect to insurance policies issued by Monroe, NTIC, and Grange.

36.    Monroe and Grange each insured R&D on a primary basis in sequential policy periods spanning from 2015 to 2022.

37.    NTIC insured R&D on an excess basis from June 15, 2017, to January 1, 2021, providing Umbrella Liability Coverage.[3]

38.    The property damage alleged in the Underlying Action was alleged to have occurred during periods in which both Monroe and Grange provided primary coverage and NTIC and Grange provided umbrella coverage to the mutual insured, R&D.

39.    Exhaustion of all applicable primary insurance available to R&D is a condition precedent to the attachment of coverage under NTIC's umbrella policies.

40.    The NTIC umbrella policies provide in relevant part that "[t]his insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis…[w]hen this insurance is excess over other insurance, we will pay only our share of the 'ultimate net loss' that

---

[3] It is believed that Grange also had Commercial Umbrella Liability Coverage with R&D while its primary policies were effective; however, based on current information and belief, these policies do not affect the rights, duties, and responsibilities of the parties in this matter.

exceeds the sum of:…[t]he total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part…" *See* Exhibit B, at Pgs. 23, 64, 105; and 152 of 206.

41.    Accordingly, the primary policies issued by both Monroe and Grange were required to exhaust their respective limits of liability before coverage under NTIC's umbrella policies could attach.

42.    Monroe's primary policies contain a "Two or More Coverage Forms or Policies Issued by Us" endorsement, which limits Monroe's total liability for the same "occurrence" to the single highest applicable limit of insurance under any one policy issued by Monroe or its affiliates.

43.    The claims against R&D in the Underlying Action alleged a single occurrence arising out of R&D's work on the construction project.

44.    Pursuant to that endorsement, Monroe's maximum primary obligation for the occurrence alleged in the Underlying Action was $1,000,000. Monroe exhausted that single highest primary limit in funding the Settlement Agreement.

45.    Grange's primary policies contain no anti-stacking provision or similar limitation restricting payment to a single highest limit where multiple policies issued by Grange apply to the same occurrence. Accordingly, Grange was required to fund the remaining primary amounts necessary to effectuate settlement, up to the limits of all applicable primary policies it issued to the mutual insured, R&D.

46.     Notwithstanding the foregoing, Grange failed and refused to exhaust its available primary limits. As a result, amounts funded by Monroe and NTIC in excess of Monroe's single highest primary limit were the responsibility of Grange as a co-primary insurer.

47.     An actual and justiciable controversy therefore exists as to the proper interpretation and application of the parties' respective policies and the priority of coverage for the claims resolved in the Underlying Action.

WHEREFORE Plaintiffs, Monroe and NTIC respectfully request that this Court enter judgment declaring:

A. That the "Two or More Coverage Forms or Policies Issued by Us" endorsement contained in Monroe's primary policies limits Monroe's obligation for the same occurrence to a single highest applicable limit of insurance across all primary policies issued by Monroe or its affiliates to the mutual insured, R&D;

B. That Grange was and is required to fund the balance of the primary settlement amounts, up to the limits of all available primary policies it issued to the mutual insured, R&D, for the same occurrence, without limitation as to the stacking of such limits;

C. That coverage under NTIC's umbrella policies could not attach, and NTIC had no obligation to contribute toward the Settlement Agreement,

unless and until all applicable primary policies issued to the mutual insured, R&D, for the same occurrence, including those issued by Grange, were fully exhausted;

D. That Monroe and NTIC are entitled to recover their attorneys' fees, costs, pre- and post-judgment interest; and

E. For such other and further relief as the Court deems just and proper.

## COUNT II –CONTRIBUTION

48.     Plaintiffs Monroe and NTIC reallege Paragraphs 1 through 33 as fully set forth herein.

49.     R&D was a mutual insured under both the Monroe Policies and the Grange Policies.

50.     Both the Monroe Policies and the Grange Policies provided primary coverage for the damages sought against R&D in the Underlying Action.

51.     Monroe and Grange shared a common obligation to indemnify their mutual insured, R&D, for amounts owed in connection with the claims asserted in the Underlying Action, under the terms, conditions, and language of their respective policies, and consistent with applicable law and principles of equity.

52.     Grange refused to pay its full share of the common indemnity obligation owed to the mutual insured, R&D, in connection with the settlement of the Underlying Action, asserting an erroneous coverage position.

53.    To facilitate the settlement of the Underlying Action and protect the mutual insured from liability, Monroe funded more than its proportionate share of the settlement, discharging obligations that properly belonged, in whole or in part, to Grange.

54.    NTIC, as an umbrella carrier, either contributed more than required or was not obligated to make any payment until all primary insurance, including that provided by Grange, was fully exhausted.

55.    The amounts paid by Monroe and NTIC in excess of Monroe's single primary limit of $1,000,000 were obligations that should have been borne by Grange as a co-primary insurer.

56.    As a direct result of these payments, the mutual insured, R&D's, liability in the Underlying Action has been fully discharged.

57.    Accordingly, Monroe and NTIC have suffered damages in the form of payments made in excess of their contractual and equitable share of the common liability and are entitled, to contribution from Grange in an amount equal to such excess payments.

58.    Plaintiff Insurers are entitled to recover from Grange all amounts paid in excess of their proportionate share of the common indemnity obligation, together with interest, costs, and any other relief the Court deems just and proper.

WHEREFORE, Plaintiffs Monroe and NTIC respectfully request that this Court enter judgment in their favor and against Grange on this Count for Contribution, and:

A. Award Plaintiff Insurers the amounts paid in excess of their proportionate share of the common indemnity obligation owed to the mutual insured, R&D, in connection with the settlement of the Underlying Action, in an amount to be proven at trial;

B. Enter judgment requiring Grange to reimburse Plaintiffs for all sums Grange was obligated to pay, as a co-primary insurer but failed and refused to fund;

C. Award Plaintiff Insurers pre-judgment and post-judgment interest as permitted by law;

D. Award Plaintiff Insurers their attorneys' fees and costs to the extent permitted by law; and

E. Grant such other and further relief as the Court deems just and proper.

## COUNT III – EQUITABLE SUBROGATION

59.    Plaintiffs Monroe and NTIC reallege Paragraphs 1 through 33 as fully set forth herein.

60.    Plaintiff Insurers bring this claim for equitable subrogation in the alternative, should this Court find Plaintiffs are not entitled to damages under Count II for contribution.

61.    Plaintiff Insurers paid amounts on behalf of the mutual insured, in settlement of the claims against R&D in the Underlying Action, to protect their own interests.

62.    Plaintiff Insurers did not make this payment voluntarily, but rather to protect the interests of the mutual insured, and avoid increased liability of the mutual insured, R&D in the Underlying Action.

63.    Plaintiff Insurers were not primarily liable for the amounts paid on behalf of R&D because Plaintiffs discharged their share of the common obligation.

64.    Plaintiffs Insurers' contribution to the settlement in excess of their contractual and legally required share, discharged the entirety of R&D's liability

65.    Equitable subrogation would not work injustice to the rights of any third party.

66.    As such, Plaintiffs are the equitable subrogees of the mutual insured, R&D, and are entitled to R&D's rights and priorities against Grange.

67.    Plaintiffs stand in the shoes of R&D, who was entitled to indemnity from Grange for damages covered by the Grange Policies, which provided primary coverage to R&D.

WHEREFORE, Plaintiffs Monroe and NTIC respectfully request that this Court enter judgment in their favor and against Grange on this Count for Equitable Subrogation, and:

    A. Award Plaintiff Insurers all amounts paid on behalf of the mutual insured, R&D, that were the legal and contractual responsibility of Grange, in an amount to be proven at trial;

    B. Declare that Plaintiff Insurers are equitably subrogated to the rights of the mutual insured, R&D, with respect to Grange's obligations arising from the occurrence at issue in the Underlying Action;

    C. Award Plaintiff Insurers pre-judgment and post-judgment interest as permitted by law;

    D. Award Plaintiff Insurers their attorneys' fees and costs to the extent permitted by law; and

    E. Grant such other and further relief as the Court deems just and proper.

## <u>COUNT IV – UNJUST ENRICHMENT</u>

68. Plaintiffs Monroe and NTIC reallege Paragraphs 1 through 33 as fully set forth herein.

69. In connection with the settlement of the Underlying Action, Plaintiff Insurers made payments on behalf of the mutual insured, in order to fully and finally resolve all claims asserted against the mutual insured, R&D.

70.    As part of that resolution, and at the insistence of Grange, the Settlement Agreement also extinguished separate and independent claims arising from Grange's additional insured obligations that were asserted in a different action and were wholly distinct from the claims against the mutual insured, R&D.

71.    By funding the settlement under those circumstances, Plaintiff Insurers conferred a direct and substantial benefit upon Grange by extinguishing or materially reducing Grange's separate additional insured exposure.

72.    Grange had actual knowledge of the benefit conferred, participated in the settlement negotiations, and required that its separate additional insured exposure be included as part of the global resolution.

73.    Grange voluntarily accepted and retained the benefit of that resolution, including the dismissal and discharge of the additional insured claims, without contributing its appropriate share and without providing any compensation, credit, offset, or other reduction to Plaintiff Insurers.

74.    Under the circumstances, it would be inequitable for Grange to retain the benefit of Plaintiff Insurers' payments without paying fair value for the benefit received.

WHEREFORE, Plaintiffs Monroe and NTIC respectfully request that this Court enter judgment in their favor and against Grange on this Count for Unjust Enrichment, and:

A. Award Plaintiff Insurers restitution in an amount equal to the reasonable value of the benefit conferred upon Grange, in an amount to be proven at trial;

B. Award Plaintiff Insurers pre-judgment and post-judgment interest as permitted by law;

C. Award Plaintiff Insurers their attorneys' fees and costs to the extent permitted by law; and

D. Grant such other and further relief as the Court deems just and proper.

Dated March 2, 2026

Respectfully submitted,

SEGAL McCAMBRIDGE
SINGER & MAHONEY, LTD.
200 East Las Olas Blvd. Suite 1820
Fort Lauderdale, FL 33301
Telephone:   (954) 765-1001
Facsimile:   (954) 765-1005

By:  */s/ Ilana B. Olman*
     **ILANA B. OLMAN, ESQ.**
     Florida Bar No: 106066
     IOlman@smsm.com
     ZACHARY S. FULTON, ESQ.
     Florida Bar No: 1068470
     ZFulton@smsm.com

     ibopleadings@smsm.com
     ***(for e-mail service only)***