UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

CASE No.: 3:26-cv-01512-MCR-ZCB

MONROE GUARANTY INSURANCE COMPANY
and NATIONAL TRUST INSURANCE COMPANY

        Plaintiffs,

vs.

GRANGE INSURANCE COMPANY f/k/a
GRANGE MUTUAL CASUALTY COMPANY,

        Defendant.

_____/

**GRANGE INSURANCE COMPANY'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Grange Insurance Company f/k/a Grange Mutual Casualty Company,

("Grange"), respectfully moves to dismiss Plaintiffs' complaint for lack of personal jurisdiction

or, alternatively, moves to dismiss Count I of Plaintiffs' Complaint for Declaratory Relief and to

strike all of Plaintiffs' requests for declaratory relief under Rule 12(b)(1) and 12(b)(6) and states

as follows:

## I.      Introduction

Grange, Monroe Guaranty Insurance Company ("Monroe") and National Trust Insurance

Company ("NTIC") dispute how a settlement paid on behalf of their mutual insured, R&D

Caulking, Inc., ("R&D"), should be allocated between them. [Compl. ¶¶ 1-3]. Pursuant to Rule 12

of the Federal Rules of Civil Procedure, Grange seeks the following relief.

As a threshold issue, Grange moves to dismiss this lawsuit because it is not subject to

personal jurisdiction in the United States District Court for the Northern District of Florida. Grange

is not licensed to sell insurance policies in Florida. It does maintain an office, own, or lease property in Florida. It does not have a Florida registered agent or a Florida mailing address. And it is being sued in connection with a Georgia insurance contract issued to a Georgia corporation. On these bases, Grange respectfully submits this lawsuit should be dismissed.

Next, and in the alternative, Grange moves this Court to dismiss Count I of Plaintiffs' Complaint for Declaratory Relief and Damages and to strike all of Plaintiffs' requests for declaratory relief under Rule 12(b)(1) and 12(b)(6). Plaintiffs seek declaratory relief regarding the parties' contractual and legal obligations related to payments the Plaintiffs made in connection with a settlement. The law is clear that they lack standing to seek declaratory relief for such past events. *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1205 (11th Cir. 1991); *see also Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 979 (11th Cir. 2015).

## II.  Background

When deciding a motion to dismiss under Rule 12, a court is generally limited to the allegations in the Complaint and documents attached to the Complaint. However a defendant properly supports a jurisdictional motion brought under Fed. R. 12(b)(2) with facts found outside of the complaint. *Wertheim Jewish Educ. Trust, LLC v. Deutsche Bank AG,* 2017 U.S. Dist. LEXIS 201731 (S.D. Fla 2017).  More specifically, a defendant who moves to dismiss for lack of personal jurisdiction must raise "through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009).

With respect to Rule 12(b)(1) and 12(b)(6) motions, the Court may also consider certain extrinsic materials, without converting a motion to dismiss into one for summary judgment. Specifically, the Court may consider documents attached to the motion to dismiss if they are: (1)

96156\329030847.v1

referred to in the complaint, (2) central to the plaintiff's claim, and (3) their authenticity is not disputed. *Collier Cty. v. Holiday CVS, L.L.C.*, 722 Fed. Appx. 915 (11th Cir. 2018).

For the purposes of challenging personal jurisdiction, Grange relies on the allegations of the Complaint, the affidavit of Andrew Kielkopf, Grange's Director-Corporate Litigation, and the Georgia Secretary of State Corporate Registration Documents for R&D and Sutter McClellan & Gilbreath. With respect to the rest of its motion, Grange also relies on the settlement agreement upon which Plaintiffs seek declaratory relief. Because the underlying settlement agreement is stated to be confidential, contemporaneously with this motion Grange has also filed a motion for leave to file that agreement under seal.[1]

### A.    The Insurance Carriers And The Insurance Contracts They Issued To Their Georgia Insured.

As noted, this dispute concerns how a settlement paid by three insurance carriers on behalf of their mutual Georgia insured, R&D, should be allocated between them. [Compl. ¶¶ 1-3]. The settlement primarily served to resolve a construction defect lawsuit filed against R&D by the Pointe Condominium Owners' Association, Inc. ("Association").

In the construction defect lawsuit, the Association accused R&D of performing deficient waterproofing work that caused latent property damage to develop over an extended time period. [ECF Doc 1. ¶¶ 15, 17, 19; ECF Doc 1-7 ¶¶ 125-126, 668-678, and 679-686].

---

[1] The settlement agreement resolved the underlying construction lawsuit. Perhaps to shield the settlement amount from other defendants, the plaintiff who filed that construction lawsuit sought to make the settlement agreement confidential. Although Grange opposed that request, Monroe Guaranty Insurance Company and National Trust Insurance Company agreed that the agreement should be confidential. went along with this confidentiality request. Because the settlement agreement is central to the resolution of this lawsuit and because the agreement is confidential, Grange submits that the agreement should be made part of the record in this case under seal to protect its confidentiality.

3

Relevant to the jurisdictional portion of this motion, the Association noted that R&D was "unauthorized to do business in Florida." [Doc 1-7 ¶ 125]. Indeed, R&D is a Georgia corporation with its principal place of business in Dawsonville, Georgia. See **Exhibit "A"**, Georgia Secretary of State Corporate Registration for R&D Caulking, Inc.

Grange insured R&D under series of primary and umbrella insurance policies which were in effect from March 5, 2015 to June 15, 2017, when Grange's coverage was cancelled at R&D's request. (the "Grange Policies"). [Doc 1-1. ¶¶ 13-14]. The Grange Policies were procured through an insurance agent, Sutter, McLellan & Gilbreath. See Affidavit of Andrew Kielkopf ¶ 7 attached hereto as **Exhibit "B."** Sutter, McLellan & Gilbreath is also Georgia corporation with its principal place of business in Buford, Georgia.  See **Exhibit "C"**, Georgia Secretary of State Corporate Registration for Sutter, McLellan & Gilbreath.

Monroe insured R&D under several primary policies which were in effect from June 15, 2017 to June 15, 2017. (the "Monroe Policies"). [Doc 1-1 ¶ 11]. Concurrent in time to the Monroe-issued primary policies, National Trust Insurance Company ("National Trust") issued umbrella/excess policies to R&D (the "NTIC Policies"). [*Id.* ¶ 12].

The NTIC Policies were directly linked to the Monroe Policies. They were issued for the same policy periods as the Monroe Policies and provided that coverage under the NTIC's policies was triggered after coverage under the Monroe Policies was exhausted. Specifically, the NTIC Policies provide coverage for the portion of the settlement that exceeds "the retained limit," which is defined as "the available limits of 'underlying insurance' **scheduled in the Declarations** or the "self-insured retention." [Doc 1-2, p. 11 (listing policies scheduled in the NTIC Declarations), and p. 27 (defining retained limit) (emphasis added)]. While the Monroe Policies are scheduled in the NTIC Declarations, the Grange Policies are not:

4

| SCHEDULE OF UNDERLYING INSURANCE | | |
|---|---|---|
| NAME OF UNDERLYING INSURER UNDERLYING POLICY NUMBER UNDERLYING POLICY PERIOD | COVERAGE | LIMIT OF INSURANCE (UNDERLYING LIMIT) |
| 026 MONROE GUARANTY INSURANCE COMPANY CA 100014760 06/15/2017 - 06/15/2018 | Commercial Automobile Liability | Combined Single Limit-Each Accident $1,000,000 OR Bodily Injury-Each Person Bodily Injury-Each Accident Property Damage-Each Accident |
| 001 FCCI INSURANCE COMPANY CPP0024354 06/15/2017 - 06/15/2018 | Commercial General Liability [X] Occurrence Form [ ] Claims-Made Form ____ Retroactive Date | Each Occurrence Limit $1,000,000 General Aggregate Limit $2,000,000 Personal and Advertising Injury Limit $1,000,000 Products-Completed Operations Aggregate Limit $2,000,000 |

[Doc 1-2, p. 10 (2017-2018); p. 51 (2018-2019); p. 92 ( 2019-2020); p. 139 (2020-2021)].

The Grange Policies, the Monroe Policies, and the NTIC Policies all list the same procuring insurance agent, Sutter McLellan & Gilbreath. Here a relevant excerpt of the Grange Primary Policy:

*SUTTER McLELLAN & GILBREATH*
*1424 NORTH BROWN ROAD STE 300*
*LAWRENCEVILLE, GA*
*30043*

*(770) 246-8300*
*Agent No. 10-094-00*
*dgilbreath@smginsurance.com*
*www.smginsurance.com*

Grange Mutual Casualty Company
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

AI

Named Insured and Address

Policy Type: *Commercial Package*

Policy Number: *CPP 2316451-12*
Issue Date: *03/08/17*
ACCT. NO: *0000179150*

R & D CAULKING INC
78 DAWSON VILLAGE WAY NORTH
SUITE 140-198
DAWSONVILLE GA   30534

Similarly, the NTIC declarations page identifies the agent as Sutter McLellan & Gilbreath. In that regard, here is an image copy of a relevant excerpt of the declaration page:

5

**Policy Number**
**UMB100014761-04**

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.
COMMON POLICY CHANGE ENDORSEMENT

Endorsement No. 008

**National Trust Insurance Company**

Named Insured  R & D Caulking, Inc.          Effective Date: 11-24-20
                                              12:01 A.M., Standard Time

Agent Name   SUTTER MCLELLAN & GILBREATH INC    Agent No.  03235-001

Finally, the Monroe Policy declarations page identifies the agent as Sutter McLellan & Gilbreath:

**FCCI®**

MONROE GUARANTY INSURANCE COMPANY
A MEMBER OF THE FCCI INSURANCE GROUP
6300 UNIVERSITY PARKWAY
SARASOTA FL 34240-8424
800-226-3224
941-907-3224

**COMMERCIAL PACKAGE POLICY**
**COMMON POLICY DECLARATIONS**

| | | |
|---|---|---|
| **POLICY NUMBER:** CPP0024354 1 | **AGENCY ID:** 03235-001 | |
| **NAMED INSURED:** R & D Caulking Inc | **AGENT:** Sutter McLellan & Gilbreath Inc 1424 North Brown Rd Ste 300 Lawrenceville, GA 30043 | |
| See 1-UNIL-9559-MU-04 11/08 | | |
| **MAILING ADDRESS:** 78 Dawson Village Way N Suite 140-198 Dawsonville, GA 30534-7168 | (770) 246-8300 | |

As previously noted, and as shown in the above portions of each carrier's declaration pages, Sutter McLellan & Gilbreath is a Georgia Corporation with a principal place of business in Georgia. [Ex. C]. Because all three policies were issued to R&D in Georgia, Georgia law controls their interpretation. *See Sturiano v. Brooks,* 523 So. 2d 1126, 1130 (1988).

On March 31, 2026, R&D settled the Association's claims against it. [Settlement Agreement to be filed under seal]. Monroe and National Trust have sued Grange claiming that they paid too large of a share of that settlement for two primary reasons: 1) Monroe's collective primary policy limits, which totaled $5,000,000, were allegedly capped at $1,000,000 by virtue

6

of an anti-stacking/non-cumulation endorsement [*Compare Id.* ¶ 11 to *Id.* ¶ 25]; and 2) The NTIC Policy could not be triggered until Grange's primary limits were exhausted. [*Id.* ¶ 29].

Grange, for its part, contends that it paid for a disproportionate share of the settlement because Georgia law allocates indemnity in a multi-carrier dispute spanning multiple time periods based on each carrier's time on the risk. And, here, Plaintiffs insured R&D for a significantly larger portion of the time during which latent damages allegedly developed from R&D's waterproofing work. *See e.g., Liberty Mutual Insurance Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634, 651 (S.D.N.Y. 2016) (applying Georgia law); *Nat'l Serv. Indus., Inc. v. Md. Cas. Co.*, No. E22907 (Ga. Super. Ct. Feb. 21, 2001); *Nat'l Serv. Indus., Inc. v. St. Paul Guardian Ins. Co.*, No. 2004-CV-83960, 2005 WL 5958768 (Ga. Super. Ct. June 7, 2005).

Grange also rejects Plaintiffs' contention that the Monroe Policies were limited to $1,000,000 by virtue of an anti-stacking/non-cumulation provision. The one case interpreting Georgia law, which meaningfully considered the enforceability of an anti-stacking/non-cumulation provision in a multi-year, multi-carrier context, noted that such a provision should not cap primary policy limits:

> [W]here numerous insurance policies underwritten by multiple insurance companies potentially cover the losses, notions of simple justice certainly encourage if not mandate the adoption of a system whereby the insurance companies share the burden in some equitable fashion. **This Court is further willing to concede that, in such a case, it is reasonable to decline to give effect to a non-cumulation clause because enforcement of the clause would directly undercut the goal of simple justice attained by the equitable distribution of liability.** (Emphasis supplied)

*Plantation Pipeline Co. v. Cont'l Cas. Co.*, No. 1:03-CV-2811-WBH, 2008 U.S. Dist. LEXIS 80680, at *18-19 (N.D. Ga. July 8, 2008) (emphasis added).

Grange also rejects Plaintiffs' argument that the NTIC Policy does not attach until after

7

96156\329030847.v1

all of the Commercial Package Policies issued by Grange had been exhausted. No court has ever held that under Georgia law that an umbrella policy cannot attach until unscheduled primary policies issued for prior years are exhausted. Further, nothing in the NTIC Policy's attachment language conditions coverage on exhaustion of unrelated, unscheduled policies issued in different years. Rather, it tethers the retained limit to scheduled underlying insurance for the same policy period. [*See* Doc 1-2, pg. 11 (stating when the National Trust Policy applies), and pg. 27 (defining retained limit) (emphasis added)]. The Grange Policies are not scheduled in the Declarations of the NTIC Policy.[Compl. Ex. B pgs. 10, 51, 92, 139].

In short, the Plaintiffs and Grange hotly disputed their respective contribution allocation responsibilities to the settlement of the Underlying Action.[2] And while R&D settled the lawsuit filed against it on February 23, 2026, negotiations between Grange, National Trust, and Monroe continued until the agreement was executed on March 31, 2026. [Doc 1-1 ¶ 21 (settlement in principal reached on February 23, 2026); (Settlement Agreement to be filed under seal). Under the terms of the settlement agreement, Grange, National Trust and Monroe reserved their respective rights to challenge how the settlement sums should be allocated between them.

### B.  Plaintiffs Secretly Race To The Courthouse While Negotiations Are Ongoing

It appears the Plaintiffs were eager to litigate their contract dispute with Grange in Florida. So, while the terms of the settlement agreement were being negotiated, the Plaintiffs secretly raced to file this lawsuit.

---

[2] The Plaintiffs' Complaint suggests that they got squeezed into this lawsuit through Grange's sharp negotiation tactics. *See Compl.* ¶ 30 ("Notwithstanding the foregoing, Grange refused to contribute its contractual and equitable share.") Grange disagrees and asserts that it was forced to contribute more than its contractual and equitable share due to the Plaintiffs' actions.

96156\329030847.v1

This is not hyperbole. The Plaintiffs filed this action, which includes multiple causes of action and spans thousands of pages with exhibits, just five business days after a settlement in principle was reached. [Compl. ¶ 21]. The settlement agreement took over a month to be finalized and executed during which time Plaintiffs were aware that Grange was preparing to sue them. Plaintiffs raced to file this lawsuit in Florida. Pursuant to 28 USCS § 1404, Plaintiffs chose this forum for strategic advantage rather than convenience.

Grange has no business being sued in Florida. Grange conducts no business of any kind in Florida. It is an Ohio corporation with its principal place of business in Coumbus, Ohio. See Kielkopf Affidavit. Grange maintains no offices in Florida and has not designated a Registered Agent in the state. It does not sell insurance policies in Florida. Grange does not have a Florida telephone number or mailing address. It does not own or lease any real property in Florida. *Id.* It is not connected to Florida because it issued an insurance policy to a Georgia company that apparently took a job in Florida despite being unauthorized to perform business there. Thus, as a threshold matter, Grange, is not subject to personal jurisdiction in the United States District Court for the Northern District of Florida. This lawsuit should be dismissed on that basis.

### III.     Argument And Citation to Authority

**A. The Plaintiffs' Complaint Should Be Dismissed Because The Court Lacks Personal Jurisdiction Over Grange.**

To establish personal jurisdiction, Plaintiffs must plead facts showing that jurisdiction is appropriate pursuant to: (1) Florida's long-arm statute and (2) the Due Process Clause of the Fourteenth Amendment to the Constitution. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015).

96156\329030847.v1

Florida's long-arm statute permits courts to exercise personal jurisdiction over a defendant if the court has general jurisdiction pursuant to Florida Statutes Section 48.193(2) or specific jurisdiction pursuant to Section 48.193(1).  *Id.*, at 1204.  Similarly, the Due Process Clause of the Fourteenth Amendment applies these concepts of general and specific jurisdiction. *Id.*

Here, Plaintiffs fail to carry their burden of establishing either basis for personal jurisdiction over Grange. Plaintiffs' jurisdictional allegations are anemic. The complaint correctly alleges that Grange is an Ohio corporation with its principal place of business in Columbus, Ohio. [Doc 1-1 § 7]. Plaintiffs then go on to allege that "[o]n information and belief, Grange transacts and conducts substantial insurance business in the State of Florida." This is incorrect. As evidenced in the Kielkopf Affidavit, it is an understatement to state Grange **does not** conduct "substantial insurance business in the State of Florida." Grange is not even licensed to sell insurance there. Grange maintains no offices in Florida and has not designated a Registered Agent in the state. It does not sell insurance policies in Florida. Grange does not have a Florida telephone number or mailing address.  It does not own or lease any real property in Florida. In sum, Grange conducts no business of any kind in Florida.  Contrary to the conclusory and unsupported allegations in Plaintiffs' complaint,  Grange's evidence conclusively establishes that it is not subject to personal jurisdiction in this Court.

### 1.    Plaintiffs Cannot Establish That the Court Has General Jurisdiction over Grange.

Plaintiffs have not shown,  and cannot show,  that this Court has general jurisdiction over  Grange.  *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015).

96156\329030847.v1

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations," without offending due process "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe Co.*, 326 U.S. at 317, 66 S. Ct. at 159). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014). A corporation's place of incorporation and its principal place of business are "paradigm all-purpose forums." *Id.* And "a corporation's operations in a forum other than its formal place of incorporation or principal place of business" will be "so substantial and of such a nature as to render the corporation at home in that State" only in "exceptional" cases. *Id.* at 761 n.19.

"[T]he paradigm bases for general jurisdiction over a corporation are (1) its place of incorporation and (2) its principal place of business." *MSP Recovery Claims Series, LLC v. Nationwide Mut. Ins. Co.*, Civil Action No. 20-21573-Civ-Scola, 2021 L 355133 at *3 (S.D. Fla. Feb. 2, 2021) ((citing *Daimler AG v. Bauman*, 571 U.S. 117, 37 (2014)). "It is only under 'exceptional' circumstances that a court can exercise general personal jurisdiction over a corporation elsewhere." *Id.; see also Carmouche,* 789 F.3d at 1204. Or, as put bluntly by the United States District Court for the Southern District of Florida, it is "incredibly difficult to establish general jurisdiction" over a corporation "in a forum other than the place incorporation or principal place of business." *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1336 n.7 (S.D. Fla. 2016).

As correctly acknowledged in Plaintiffs' complaint, Grange is neither incorporated in Florida, nor is its principal place of business located in Florida. [Doc 1-1 ¶ 7]. Rather, Grange is an Ohio corporation with its headquarters in Columbus, Ohio. [*Id.*].

96156\329030847.v1

Its connections with Florida are not "so 'continuous and systematic' as to render [it] essentially at home" here. *Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe Co.*, 326 U.S. at 317, 66 S. Ct. at 159). As made abundantly clear in Kielkopf Affidavit, Grange does not do any business in Florida. It is not licensed to sell insurance policies in Florida. It does not maintain an office or a registered agent in Florida. It also does not own or lease any real property in Florida and does not have a telephone number or a mailing address in this state.

Further, the policies Grange issued to R&D were procured through a Georgia insurance agent. And R&D itself is a Georgia corporation who was not even authorized to do business in Florida.

Plaintiffs do not allege any facts, and cannot produce any evidence, demonstrating that Grange's "affiliations with [Florida] are so continuous and systematic as to render [it] essentially at home in the forum State." *See Carmouche,* 789 F.3d at 1204. Accordingly, Plaintiffs cannot establish that the Court has general jurisdiction over Grange.

### 2.    Grange Is Not Subject To Specific Jurisdiction.

A defendant is subject to specific jurisdiction if the claim against him arises out of or relates to the defendant's contacts with Florida. *See* Fla. Stat. § 48.193(1); *see also Carmouche,* 789 F.3d at 1203–04. To show specific jurisdiction, Plaintiffs must demonstrate a "strong relationship among the defendant, the forum, and the litigation." *Jekyll Island-State Park Auth. v. PolyGroup Macau Ltd.*, 140 F.4th 1304, 1326 (11th Cir. 2010) (cleaned up). "[I]t is the defendant's conduct" - not the plaintiff's or a third party's - "that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore,* 571 U.S. 277, 285 (2014).

12

And it is the plaintiff's burden to plead sufficient jurisdictional allegations to subject a non-resident defendant to jurisdiction under Florida's long-arm statute. *See Banco Continental, S.A. v. Transcom Bank (Barbados), Ltd.*, 922 So.2d 395 (Fla. 3d DCA 2006). Accordingly, a plaintiff must either track the language of Florida's long-arm statute, § 48.193, which is to be strictly construed, or plead the requisite jurisdictional facts with specificity. *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989). Plaintiffs has done neither.

Instead, Plaintiffs incorrectly alleges that Grange "transacts and conducts substantial insurance business in the State of Florida, including issuing policies that insure risks and insureds with operations in Florida." [1-1 ¶ 7]. As noted, this is untrue. Grange is not even licensed to sell insurance policies in Florida.

Plaintiffs also incorrectly allege that Grange insured "R&D[] for risks arising out of operations in Florida." [*Id.*]. In truth, Grange issued a series of Commercial Package Policies and Commercial Umbrella Policies to a Georgia corporation with a principal place of business in Dawsonville, Georgia, and which was allegedly not even authorized to perform business in Florida. [Doc 1-5 p. 1 (primary policy); Doc 1-6 p. 1 (umbrella policy); Doc. 1-7 ¶ 126 (R&D is not authorized to transact business in Florida].

Tellingly, the Schedule of locations in the Grange Policies for all premises owned, rented or occupied by R&D is even limited to Dawsonville, Georgia. [Doc 1-5, p. 3]. Further underscoring Grange's intent and expectation that the scope of its contractual relationship with R&D would be limited to Georgia, the Grange Commercial Package Policies contain several Georgia specific endorsements. [*See e.g., Id.* pp. 56-57, 71, 160]. By contrast there are no endorsements, or even any references in the policy to Florida.

13

Next, Plaintiffs' allegation that Grange "engaged in the handling, adjustment, administration, defense and settlement of claims in the Underlying Action in Florida" is a red herring and does not establish specific jurisdiction. "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). But Plaintiffs' claims do not arise out of Grange's claims-handling activities.

Every cause of action in the Complaint faults Grange for allegedly failing to contribute its contractually required share of the settlement. Such claims turn entirely on the interpretation of the Grange Policies, the Monroe Policies, and the NTIC Policies. Whether Grange owes contribution, whether Plaintiffs are entitled to equitable subrogation, and whether Grange was unjustly enriched are questions answered by reading policy language and applying Georgia law to that policy language. *See e.g., Liberty Mutual Insurance Co. v. Fairbanks Co.,* 170 F. Supp. 3d 634, 650-651 (S.D.N.Y. 2016) (noting Georgia law applies to an allocation dispute involving Georgia insurance policies)*; Arrow Exterminators, Inc. v. Zurich Am. Ins. Co.,* 136 F. Supp. 2d 1349 (N.D. Ga. 2001)*, Ameristeel Corp. v. Employers Mut. Cas. Co.,* 2005 U.S. Dist. LEXIS 15715 (M.D. Ga. July 26, 2005).

The claims do not depend on examining how Grange administered or defended the underlying lawsuit. Grange analyzed its coverage obligations and concluded it owed less than Plaintiffs demanded. Plaintiffs even directly allege that "Grange refused to pay the full amount of its obligation based on an erroneous coverage position." [Doc 1-1 ¶ 24]. Put simply, this lawsuit does not turn on Grange's defense or the near identical actions of claim administration, adjustment and administration of the claim.

14

3.     **The Exercise Of Personal Jurisdiction Would Violate Due Process**

If Grange were somehow subject to long arm jurisdiction, the Court still could not exercise personal jurisdiction over them due to federal due process requirements. Due process requires that (1) the defendant purposefully availed itself of the privilege of conducting activities within the forum state; (2) the plaintiff's claims arise out of or relate to those activities; and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, such that the defendant could reasonably anticipate being haled into court there. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250–51 (11th Cir. 2000); *Jekyll Island-State Park Auth. v. Polygroup MacAu Ltd.*, 140 F.4th 1304, 1316 (11th Cir. 2025) ("Due process protects "an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations. The heart of this protection is fair warning—the Due Process Clause requires that the defendant's conduct and connection with the forum State be such that he should reasonably anticipate being haled into court there." (internal citations and omissions omitted)).

The fact that Grange's insured was involved in the construction project in Florida (despite apparently being unauthorized to work there) and was sued in Florida has no bearing on whether Grange could have reasonably expected to haled into a Florida Court to defend *itself*. Such allegations do not show that Grange created a substantial connection with Florida. And it is the defendant's conduct availing itself of the forum state to which the courts look. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250–51 (11th Cir. 2000). R&D's decision to do (allegedly unauthorized) business in Florida is not evidence that Grange purposefully availed itself of Florida.

15

In that regard, the Florida Supreme Court in *Meyer v. Auto Club Ins. Ass'n*, 492 So. 2d 1314 (Fla. 1986) addressed a similar jurisdictional issue. There, the insurer and the insured were both out-of-state residents at the time the insurance contract was issued, but the insured later moved to Florida and got into an accident in Florida. The Court held that the fact that the insured caused a tort in Florida was insufficient to give Florida courts jurisdiction over the insurer. *Id.* even if the insured, by a unilateral act, moves to Florida. *Meyer*, 492 So. 2d 1314. In short, an insured's unilateral decision to enter a forum and commit a tort there is not imputed to the insurer for the purposes of establishing personal jurisdictional.

Indeed, "[t]he policy of insurance cannot be read so broadly as to allow the insurer to be sued wherever the insured is involved in an accident, even though the contract of insurance applies to accidents and losses which occur in any of the 50 states, Puerto Rico or Canada. The two are not coterminous. To allow suits of this nature would deprive the insurer of its due process rights guaranteed by the Fourteenth Amendment to the United States Constitution." *Strickland Ins. Grp. v. Shewmake*, 642 So. 2d 1159, 1161, 19 Fla. L. Weekly 2018 (Dist. Ct. App. 1994) (internal citations omitted); *see also Wiegering v. Blue Cross & Blue Shield of Mass., Inc.,* 2017 U.S. Dist. LEXIS 136316, at *19-20 (S.D. Fla. Feb. 2, 2017) ("Courts throughout the country have addressed similar jurisdictional issues in the healthcare context and have generally held that an insurer or third-party administrator does not avail itself of the privilege of doing business in a particular state simply because the insured chose a medical provider in that particular forum and the insurer or third-party administrator pre-approved treatment or paid medical bills.")

Grange is not subject to personal jurisdiction in Florida and this lawsuit should be dismissed on that basis.

96156\329030847.v1

**B.** **Count I Should Be Dismissed Because Plaintiffs Lack Standing to Seek Declaratory Relief Concerning Past Events.**

If the Court were to find that it has personal jurisdiction, then pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Grange moves this Court to dismiss Count I of Plaintiffs' Complaint for Declaratory Relief and Damages and to strike all of Plaintiffs' requests for declaratory relief from this lawsuit. Plaintiffs seek declaratory relief regarding the parties contractual and legal obligations related to payments they made in connection with a finalized settlement. They lack standing to seek such relief.

"The federal courts are confined by Article III of the Constitution to adjudicating only actual 'cases' and 'controversies.'" *Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342, 1346 (11th Cir. 1999). Accordingly, the Declaratory Judgment Act permits declaratory judgments only where an "actual controversy" exists. 28 U.S.C. § 2201; *see Malowney*, 193 F.3d at 1347. The controversy must present a definite rather than speculative threat of future injury. *See Id.*

Standing is grounded in this same case-or-controversy requirement. *Ga. State Conf. of NAACP Branches v. Cox*, 183 F.3d 1259, 1262 (11th Cir. 1999). A plaintiff seeking declaratory relief demonstrates standing only by alleging that the defendant is likely to injure the plaintiff in the future, not the past. *See Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1205 (11th Cir. 1991).

Count I of the Complaint seeks a declaratory judgment "pursuant to Fed. R. Civ. P. 57" purportedly "for the purpose of resolving a present, real, and substantial controversy among the parties." [Compl. ¶ 35]. But while that allegation tracks the language of Rule 57, there is no plausible "present" controversy requiring declaratory resolution. The underlying action against R&D has settled. The settlement agreement has been executed. The Plaintiffs directly allege that

17

payments have been made. The dispute is about who should bear the costs for these past events. Indeed, the Complaint does not contain any allegations that could plausibly support a finding that Plaintiffs are likely to be subject to future injury. They are simply seeking damages for alleged overpayment. This is not a question for declaratory relief.

In *Twin City Fire Insurance Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 979 (11th Cir. 2015) (unpublished), for example, the Eleventh Circuit concluded that a declaratory judgment claim became moot upon the plaintiff insurer's payment of settlement funds because "a declaration could not have had any bearing on the parties' future conduct." *Id.* Rather, the insurer simply sought "to recoup what it already had paid." That is precisely the posture of this case.

Similarly, in *Housing Enterprise Insurance Co. v. AmTrust Insurance Co. of Kansas*, 212 F. Supp. 3d 1330, 1338 (N.D. Ga. 2016), the court dismissed a declaratory judgment claim between co-insurers in an action that sought both declaratory relief and equitable contribution arising from a settled underlying action. The court held that declaratory relief concerning the priority of insurers' policies "is unavailable because such declaratory relief concerns only past events, not future injury." *Id.*.

Plaintiffs' Complaint falls squarely within this line of authority. There is no future conduct to be governed by a declaratory judgment. Plaintiffs seek only to establish that Grange owes them money for a completed settlement. In that regard, an examination of each specific declaratory relief Plaintiffs seek in Count I confirms it relates to past events:

Declaration A asks the Court to declare that Monroe's "Two or More Coverage Forms or Policies Issued by Us" endorsement limits Monroe's obligation for one occurrence to a single highest applicable limit of $1,000,000. [Compl. P.13]. This is a request to interpret how Monroe's

18

96156\329030847.v1

policies should have applied in resolving the claims against R&D. Again these claims have already been settled.

Declaration B asks the Court to declare that Grange "was and is required to fund the balance of the primary settlement amounts." *Id.* Put differently, Plaintiffs asks the Court to declare what Grange should have done when the settlement was funded. The would-be declaratory claim that Grange "is required to fund the balance" is a contribution claim masquerading as a claim for declaratory relief.

Declaration C asks the Court to declare that NTIC's umbrella policies could not attach until all primary policies were exhausted, including those issued by Grange. *Id.* Again, as the settlement agreement has already been finalized and paid, the question of when NTIC's umbrella coverage "could" attach is, at most, an argument in support of contribution. It is not a proper claim for declaratory relief.

Declarations D and E make boilerplate requests for attorneys' fees, costs, and pre- and post-judgment interest and "such other and further relief as the Court deems just and proper." *Id.* Such boilerplate adds nothing to the declaratory claim and should be stripped from this action.

## IV.    Conclusion

For the foregoing reasons, this lawsuit should be dismissed because this Court lacks jurisdiction over Grange. Alternatively, Count I of Plaintiffs' complaint should be dismissed because  Plaintiffs lack standing to pursue declaratory relief for past events.

96156\329030847.v1

## CERTIFICATION OF CONFERRAL

Counsel certifies that this document is in compliance with the attorney-conference requirement under Local Rule 7.1(B) and counsel for Plaintiffs have confirmed that Plaintiffs object to the relief requested in this Motion.

**HINSHAW & CULBERTSON, LLP**

By: *Gary Khutorsky*
Gary Khutorsky, Esq. (FBN 814271)
gkhutorsky@hinshawlaw.com
Stephanie S. Carlton, Esq. (FBN 123763)
scarlton@hinshawlaw.com
201 East Olas Blvd, Suite 1450
Ft. Lauderdale, FL 33301
Tel: 954-467-7900
Fax: 954-467-1024
*Attorneys for Defendant, Grange Insurance Co.*

20

96156\329030847.v1

## CERTIFICATE OF SERVICE

I hereby certify that on **April 10, 2026**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**HINSHAW & CULBERTSON, LLP**

By: __*Gary Khutorsky*_____
Gary Khutorsky, Esq. (FBN 814271)
gkhutorsky@hinshawlaw.com
Stephanie S. Carlton, Esq. (FBN 123763)
scarlton@hinshawlaw.com
201 East Olas Blvd, Suite 1450
Ft. Lauderdale, FL 33301
Tel: 954-467-7900
Fax: 954-467-1024
*Attorneys for Defendant, Grange Insurance Co.*

21